2012-13-36, Mr. ONDERSMA Thank you, Your Honor, and good morning. Thank you, Your Honors, Carl Ondersma for Defendant's Appellants Lenco Marine and Richard DeVito, collectively Lenco, and thank you for accommodating our schedules for rescheduling. As you're aware, this dispute is over automatic movement of trim tabs affixed to the hull of a boat, and in my first period of speaking, I'd like to talk about the Court's claim construction, infringement, willfulness, and settlement agreement time allotting. Regarding claim construction, it's Lenco's position that the District Court erred by effectively functionally treating certain means plus function limitations in the claims. For example, regarding Claim 1, Limitation 5, and Claim 9, Limitation 6, those are the limitations directed toward automatic movement of the trim tab, the District Court identified the corresponding structure as just being the control circuit 42 of Figure 1 and equivalents thereof. Well, Figure 1 of the 780 patent merely shows the circuit as a block diagram. Can I ask you, is that you didn't focus on Limitation 4? Are the arguments you're making with regard to Limitation 5 the same as 4, or is it a different twist to it? A little bit different twist. There's different structure involved, but Limitation 4 in both Claims 1 and 9 address the structure that actually physically moves the trim tab. And that's the valves and the pressure and the pumps? And actuators and pumps, yes, correct, Your Honor. All right, and then, but your argument now that you're presenting, at least orally, deals with, I'm sorry, I cut you off. Claim 1, Limitation 5, and Claim 9, Limitation 6. And they have some overplay, but I'm just focusing on the circuit here that's involved with that automatic movement. For precedent of this Court, we argue that the corresponding structure of a circuit must include specific components of the circuit. As this Court said in Texas Digital Systems v. Telegenics, 308 of 3rd 1193, this Court explained that a block diagram of a circuit served merely as an overview for introducing and explaining details of the circuit that were shown in a more detailed figure. That corresponding structure included then both the detailed drawing and the written description explaining that detailed drawing. In this case, the 780 patent discloses a single circuit. It's a timer circuit, and that circuit is critical to performing the claim function. Just as in Texas Digital Systems, the block diagram of Figure 1 is just an overview, and the corresponding structure is shown in Figure 2, we argue, and also in the details in the written description. Moreover, by analogy to computer cases that involve means plus function limitations, it's been often repeated, such as in Aristocrat Technologies and WMS Gaming, that the corresponding structure is not simply a general purpose computer, but it's the computer programmed to perform the algorithm that's disclosed in the specification. When we submit, just as the circuit components of that circuit dictate the way in which it operates, so does, in the computer sense, the algorithm control the way in which that special purpose computer works. Now that one and only circuit that's disclosed in the specification is only disclosed in connection with a hydraulic trim tab system, and Judge Prost, this goes towards your questions for Limitations 4, Claims 1 and 9. I'll leave it primarily to our briefing there, but I just want to note in passing that the hydraulic system that's shown in the 7080 patent is the only one that is linked to the circuit and enabled. Of course, the specification says that electrical or pneumatic actuators are permissible, and those aren't necessarily new, are they? The actuators themselves aren't new, but there's testimony in the record that showed from Bennett's own witnesses that showed that no one had ever seen those types of actuators in connection with a trim tab system. But more importantly, in the 780 patent, that one and only circuit... Maybe that's why the patent was heisted. But again, the 780 patent doesn't show the circuit in connection with any of those actuators, and we would argue that there's no enabling, there's no linking as to how that would work. Moving on to the infringement issue, there were two LENCO systems at issue. One was an original system that would perform the automatic retraction when power was removed from an orange wire, and there was a revised system that was introduced more than two years after this suit was filed, and in that system, there was a wire that could receive an engine RPM signal from a tachometer, and when the RPM dropped... In other words, they took another tach, one might say. One might say, yes. But didn't the district court say that simply adds an element, and adding an element doesn't avoid infringement? Well, with regard to that, the district court said it was an indirect connection, yes. But I want to make the point that that was an intentional design to further differentiate. There was already belief that there was no infringement in the first place, but during prosecution of the 780 patent, the application claims were all initially rejected as being anticipated in view of a tachyuchi patent, and that patent said, or the prosecution, excuse me, said that, in rejecting them, asserted that tachyuchi disclosed a trim tab system that was, quote, controlled by engine speed, close quote. In response, Bennett amended claims, and the appendix is A4544 to 4550 for the prosecution history. But based on those amendments and arguments that Bennett made, we're arguing that they're precluded from asserting that the 780 patent claims then encompass a system that has automatic control based on engine RPM. Let me ask you a question. Let's assume for the moment that could you not have a situation here where there was based on possibly an alternative claim construction, no infringement, but yet still a breach of the settlement agreement? In other words, say one were to conclude that, yes, you have to look to figure two of the structure, and for that reason there's no infringement down the road. However, one then looks to what you've done, hitching up to the tachymeter, and that's not an allowed hookup, if you will, under the settlement agreement. So what's the situation if you find no infringement, but arguably a breach of the settlement agreement? Where would we be then? I would say that the settlement agreement didn't say anything silent regarding whether or not there could be other alternative designs contemplated. So that would be one matter. But doesn't the agreement say, you can't, I always have to look at this, I guess it's to wire Lenko's retraction device in any manner other than as shown in Appendix B. So assume for the moment you're wired in a way that does not infringe, because of whatever reason, claim construction, etc. But you are, strictly speaking, wiring in a way other than as shown in Appendix B, so that you breach the agreement. Where would that lead you? Two important points I'd like to make on that, thank you. One is, again, when this settlement agreement was entered, it was contemplated for the devices that were then existing. And I don't think that there's anything in the settlement agreement that prohibits Lenko from coming out with a new system that's an alternative. They can't be restricted to build only the devices that they were then building at that time. But an important point that I would really like to make is that the district court based its rulings of breaching of the settlement agreement completely on actions taken by Lenko that took place after the suit was filed in March 2004. Paragraph 13 of the settlement agreement, at A3052, provides that Bennett would not file suit against Lenko as long as Lenko was in compliance with the agreement. And the district court's findings of fact, conclusions of law, even recite that Lenko was in compliance with the settlement agreement. Except for Paragraph 10. But the actions that they're citing against Paragraph 10 are things that took place after the suit was filed in March 2004. Well, Paragraph 10 contemplates the future. So, surely, that's when a breach wouldn't occur. But I'm saying if there is a breach, the breach occurred when Bennett filed suit, when they shouldn't have under Paragraph 13. You're saying Bennett breached. Bennett breached under Paragraph 13. Well, leaving that aside, what would be your answer, Mr. Nussbaum, to the situation where there's no infringement, but yet a wiring contrary to what's allowed in Appendix B? Where would that leave us? Well, that's a good question, Your Honor. And I would have to say that, again, the agreement was contemplating the devices then in existence. Now, leave that aside for the moment. Take that off the table. On its face, you can make that argument. I hear you making it. But on its face, Paragraph 10 simply says you will not wire in any way other than as shown in Appendix B. And what if it's wired in a way that doesn't infringe, but is contrary to what's in Appendix B? One thing I would like to do is if we have Appendix B available, I believe it may have indicated that it was to be wired to a non-engine switch, i.e. not a key switch for turning the boat on and off. Appendix B is at 3056. But wouldn't the point be that if you're hooked up to the tachometer, you're indirectly hooked up to an engine switch? But say you're off the hook for that kind of infringement because of claim construction and the whole issue of the Figure 2 point about the claim construction. So we say, OK, no infringement because you don't have equivalent structure. Yet, you're not in compliance with Appendix B because you're hooked up to an engine switch. Say that that was to be a finding. Where would that lead you? I guess I would have to take issue with the fact that the tachometer is not an engine switch as contemplated by the 780 patent. It's clear that the engine switch is the key switch. But as soon as I'm trying to get to the question, can you have a situation here where there's no infringement, yet a breach of Paragraph 10 of the Settlement Agreement because of infringement? It's an issue that's not looked at in detail, obviously. And there may be something there more than I'm appreciating. But I would say that the tachometer is a non-engine switch. And so I would say it's possible, but I don't think that's the issue here. OK. Mr. Andersen, you wanted to save a few minutes, some of which has transpired. But we'll save three minutes for you. OK. Thank you. Mr. Gale. Now, you have a cross appeal. You want to save some time for the cross appeal. Yes, sir. If it turns out there's something to reply to, and if there isn't, then it's gone. Yes, sir. So use it or not. Thank you, Your Honor. First of all, may I please report James Gale from Feldman Gale on behalf of the appellee and cross appellant, Bennett Marine. First, let me thank the panel for the first rescheduling due to the death of my family. I appreciate it. And I appreciate the considerations of the panel. This case really presents a great opportunity for this panel because of the fact that what it does is it really fills in an area of which there's a dearth of case law that really goes back almost 20 years. And in fact, the- We're not a legislature, Mr. Gale, looking for opportunities.  That's right, Your Honor. And in fact, it dovetails with a case that you wrote back in 1994. On behalf of the court. Excuse me? On behalf of the court. On behalf of the court called Inter Spiro. And in Inter Spiro, there was a situation very similar to what we have here, wherein there was both an agreement between the parties, which was determined to be breached. You're arguing the cross appeal point now. Correct. And if the panel has any questions regarding the main appeal- Yeah, well, I have one. Yes, Your Honor. Did you deal with Judge Schall's question to your friend on the other side, which is, let's assume hypothetically that we see there's no infringement here based on claim construction and infringement analysis. Is it your position that you have an independent cause relating to the breach of the settlement agreement, notwithstanding a conclusion of non-infringement? Yes. And in fact, under the Gerlov case, G-J-L-O-V-E, which came some three years after Inter Spiro, it was exactly the situation wherein the lower court there felt that or determined that there was an infringement under the patent laws as well as a breach of the settlement agreement, except for the fact that there was, as determined by this court, no patent infringement. And the court said, okay, that means that you cannot ascribe damages pursuant to 284, but you should still go ahead and apply breach of settlement contract damages. Well, I'm not familiar with the details or the language in the settlement agreement in the case that you cite, but I guess I'm a little weak. The settlement agreement in that regard raises questions for me because I read paragraph 13 as being sort of the relief that's sought. That's the only reference unless you can point me to another that says, okay, what happens if there's a breach of the settlement agreement? And it seems to me that the only paragraph in the agreement that deals with that is paragraph 13. And what paragraph 13 says is Bennett agrees that if you do this, I'm not going to breach suit, but if Lenko doesn't satisfy this, then Bennett's relief or violation of the settlement agreement is to bring an action of infringement. Am I missing something in the settlement agreement, or is that really what the settlement agreement contemplates in terms of relief that there's an arguable breach? Well, first of all, when under state law, as cited in our brief, when one party breaches an agreement, it relieves the other party, the non-breaching party, of all other obligations under the contract. And so Lenko was the first one to breach the contract by violating, as found by the lower court, as a matter of fact, that Lenko breached the contract. And so thereafter, as determined by the court, as proper under Florida law, the non-breaching party is relieved of all of its obligations, including any obligations under paragraph 13 or anywhere else in the agreement. I don't disagree with that. So it seems to me, I guess, not disagreeing with what you said, it seems to me that what the settlement agreement contemplates is if Lenko does not satisfy its obligations, Bennett is now free to go ahead and bring an action for infringement in the court. That's what I'm reading the settlement agreement is contemplating if there's noncompliance by either side. Am I wrong about that? Well, is Your Honor indicating that that is the only remedy that Bennett has, that it's a restriction or a covenant? Because that, to me, is not the way that paragraph is written. It's not the way it was determined by the lower court. And, in fact, as a result of the breach by Lenko, that's exactly what Bennett ultimately did, which is it brought a patent infringement action as well as a breach of settlement agreement for Lenko's failure to abide by the agreement. And so the position here that Lenko put Bennett in is a situation wherein Lenko goes ahead and negotiates an agreement for $70 per unit. No sooner is the ink dry on that agreement that it, A, breaches the contract, B, infringes the patent, and then seeks to negotiate a lower license value under the Georgia-Pacific standards, which is exactly what happened here. But what you're reading of the settlement agreement is in perpetuity, or as long as the patent is still alive, if they do anything under the settlement agreement, they've got to pay $70 per, notwithstanding whether or not there's infringement, right? That's correct, Your Honor. That's exactly right. But, in fact, as long as the patent is in force and as long as they are abiding by the agreement, there is no infringement, there is no breach of contract, but the minute that they violate it, they... What I'm pointing to, because look at paragraph 12. Yes. They agree to pay, the agreement to pay the $70 is in paragraph 12. And they agree to pay that amount for each device sold in Appendix A. Correct. So that's the obligation, right, with respect to... Pass sales. Pass sales. And then it says, they agree that the royalty constitutes full payment for each of the 371 devices. It talks only about pass sales. And they agree not to bring infringement against Lenko for one or more of the devices. This all, the settlement agreement, appears to me to be with respect to all of those devices and only one. No, it also agreed that, in fact, throughout the agreement, it agreed that they would not take future actions to either induce customers to violate the patent or wire it in an improper fashion. And, in fact, that's in paragraph 10. And so that's an additional obligation over and above those obligations set forth in paragraph 12. And so to go ahead and benefit Lenko for breaching its contract would just turn the law on its head, both state law and patent law, because there was a proper determination of patent infringement here. And, in fact, while you raised the question, I believe, Judge Prost, about the issue of claim construction, here it is very clear under the Atmel case and the personalized media case that, in fact, it's not just a black box, Control Circuit 42, as indicated by the appellant. Rather, it is a control circuit as set forth in column 1, lines 55 to 59 of the patent, which every single expert and every single engineer in the lower court testified they, as a person of ordinary skill in the art, would know exactly what that means when you're talking about electronic control circuitry that raises and lowers trim tabs upon a removal of power from the engine. So if a person of ordinary skill in the art knows exactly what that wording means, then, in fact, that is sufficient. And, in fact, in the PTO guidelines, the PTO guidelines make it clear that, in fact, if, in fact, a person of ordinary skill in the art, and this is not in my brief, but under the Federal Register Guidelines, Volume 76, Number 27, February 9, 2011, Section Roman Numeral 2C, with regard to interpreting and claim limitations under 112, Paragraph 6, Subsection 2, it talks about rejections under Section 112.2 when examining means plus function limitations under Section 112, Paragraph 6, and there it's stated that the disclosure must be reviewed from the point of view of one skilled in the relevant art to determine whether that person would understand the written description to disclose the corresponding structure, material, or acts. And in this situation, their own expert, Mick Alexander, testified, yes, a person of ordinary skill in the art knows that it's a timing circuit, that the timing circuit can be the exact type that Bennett used, or it can be the pulse-generated system that Lenko used, which was in existence in August of 1989 when the patent was filed. Their engineer that built the system also testified to the same effect, and our expert testified that everybody knows the type of control circuitry that is referred to when you talk about a control circuit that can raise or lower trim tabs upon removal of power from the engine. So it was very clear. This was not just something that was just a matter of law, but this was a matter of fact that was determined by the three experts that testified at the lower court level. So for them to come in now and say, well, you know, nobody really knows what's in that black box, that's not accurate. So I didn't want to interrupt your discussion of the claim construction issue, but getting back to what you were discussing with Judge Prost, paragraph 13 speaks in terms of, suggests an infringement suit if there's a breach of the settlement agreement. And the question is, I guess your argument is that, yes, it's true, paragraph 13 contemplates that, but our remedies are not limited by paragraph 13. Is that what you're saying? That's exactly right, Your Honor. And in fact, it's not because we're seeking to deviate from the contract. We're not looking to be absolved from the terms of the contract. We're sticking by what's set forth in Florida law, which is that when one party breaches, the other party is relieved of its obligations. No, but that's not, I'm not, I'm sure that's the Florida law on that point, but I guess the question here is, not one, in my view, and I could be mistaken, the question is not one party breaching and the other party being in, thus free of its obligations, but rather one party breaching, and what are the remedies that the non-breaching party has? Assume, again, that there's no infringement here, but yet there's a wiring that is contrary to paragraph 10 of the settlement agreement because the wiring is contrary to appendix D. What do you say happens there? Well, first of all, if there's a breach of the agreement or a violation in the wiring, Bennett has the opportunity to go ahead and sue for either breach of contract or for patent infringement. But let's say that it's determined that there's no infringement, but that the way it's wired does not comply with paragraph 10 of the settlement agreement. So that's your circumstance, no infringement, but at the same time, noncompliance with paragraph 10. I grant you this is somewhat hypothetical, but we have to explore these alternatives. Sure. What's your response in that situation? In that situation, then Bennett has a claim for breach of contract. And you would say that that is so under Florida law because even though paragraph 13 speaks in terms of an infringement action, that doesn't preclude you from resorting to breach of contract remedies under Florida law. Is that your position? Yes. And in fact, if you look at paragraph 13, paragraph 13 does not say what your honors are saying, that thou shalt not bring a breach of contract action. What it says is the flip side, which is, well, so long as you do what you're obligated to do, you won't sue me for patent infringement, which is the law of licensing. That's all it is. But of course, under the scenario that Judge Shull is hypothesizing on, there's no willful infringement implicated here. Unfortunately, yes, which is why we maintain that there is patent infringement and willful infringement and willful inducement and attorney's fees which were assessed, which after nine years, to let this individual off of his actions and the company's actions, the court found was just not equitable, not appropriate,  that there was inducement to infringe, and that there was a violation of the patent laws. And I have 44 seconds left on my reply, unless the panel has questions now. We will save it if there is something for you to reply on the cross-field. Thank you. Mr. Andresmar has three minutes. Thank you, your honors. I want to make it clear, because I'm not sure how clear it was in our briefing, that it was Bennett that was the first party that breached the settlement agreement under paragraph 13. All of the actions cited by the district court in support of that breach took place after this suit was filed. Redesigned settlements to 2006, indemnification agreements after the 2004 suit was filed, purported conversations with customers also after the suit. The court also noted that Lenko did what it was obligated to do under the settlement agreement. Therefore, Lenko was relieved from its obligation. Mr. Andresmar, let me ask you, I hear what you're saying. You repeat again the argument you made during your main portion of your presentation that all of these actions occurred after the settlement agreement, or after suit was filed. After suit was filed. Why would that make a difference? Because paragraph 13 states that Bennett would not bring suit as long as Lenko was in compliance. Lenko was in compliance until March 2004 when the suit was filed. It was only after the suit was filed when Lenko was being bullied by a competitor, decided, okay, I'm going to try and get even further away, and came out with their redesigned systems. So we submit that Lenko was released from its obligations under the settlement agreement. And so that's your response to, if there is no infringement, why there's no alternative cause of action by Bennett under the settlement agreement. Correct, but also because the settlement agreement contemplated particular devices and it said wired to a non-engine switch, and we would argue that the engine switch, as contemplated in the 780 patent, is a key switch, and that revised version was not wired to a key switch. And as to Mr. Gayle's comments regarding all of these possible... That's because it's hooked up to the tachometer. It's hooked up to the tachometer, not an engine key switch, as is disclosed in the 780 patent, was amended during prosecution, and is what Bennett was complaining of in the first instance. Just briefly as to the arguments that were presented that it can be any kind of circuit, and there's all these other types of circuits that would work. The testimony was that people skilled in the art might be able to come up with a different circuit that could do that job, but there was nothing that these were known substitutes for the timer circuit that's disclosed in the 780 patent, and I would refer to our footnote 13 from Blanco's response and reply brief filed on February 1, 2013. If there are any other questions, I'd be happy to take them. No, thank you, Mr. Andresma, and I think there's nothing to respond to on the cross-appeal. So the case will be submitted. Thank you. Thank you. All rise. The Honorable Court is adjourned on today's debate.